UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| NANCY STERLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:12-CV-00050-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Nancy Sterling seeks judicial review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. Pursuant to the Order transferring the case, the undersigned now files this Report and Recommendation.

On December 2, 2008, Sterling and a vocational expert testified at a hearing before an administrative law judge (ALJ). Sterling was represented by counsel at the hearing. The ALJ determined on January 16, 2009, that Sterling was not disabled. Sterling administratively appealed that decision, and the Appeals Council remanded the case for further proceedings.

On July 14, 2010, Sterling and two expert witnesses—a medical expert and a vocational expert—testified at a second hearing before the ALJ. Sterling was again represented by counsel. On August 23, 2010, the ALJ found that Sterling was not disabled because she could perform jobs

1

that existed in significant numbers in the national economy. The ALJ based his conclusion in part on the testimony of the vocational expert, who identified jobs existing in the national economy that someone with Sterling's age, education, work history, and residual functional capacity (RFC) could perform.

Sterling appealed the ALJ's second decision, but this time the Appeals Council denied review. Therefore, the ALJ's second decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## **Standard of Review**

A plaintiff is disabled and may be entitled to disability insurance benefits and supplemental security income if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013). "The claimant bears the burden of showing she is disabled through the first four steps of the

analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC, defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 416.920(a)(4), 416.945(a)(1).

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ applied an incorrect legal standard or (2) the ALJ's determination is not supported by substantial evidence. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## Discussion

I. <u>The ALJ considered the effects of Sterling's bipolar disorder.</u>

The ALJ concluded that Sterling had the following severe impairments: "chronic back pain complaints, obesity, diagnosed depression versus a bipolar disorder, anxiety, a diagnosed conversion disorder/pseudoseizures versus a seizure disorder, and a history of polysubstance abuse[.]" (Tr. 13.) Sterling argues that substantial evidence does not support the ALJ's finding that she "suffers from diagnosed depression versus a bipolar disorder[.]" (Pl.'s Br. 25.) She asserts that the ALJ should not have relied "on the Medical Expert's conclusion that [she] suffered from depression instead of

Bipolar disorder" and that remand is required so that her bipolar disorder "can be properly assessed and factored into her disability determination." (Pl.'s Br. 26.)

In essence, Sterling appears to argue that the ALJ's use of the term "versus" indicates that he did not consider the effects of her bipolar disorder in his disability analysis. An ALJ must consider the combined effect of all of a claimant's impairments in making a disability determination. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments [.]"); 20 C.F.R. §§ 404.1545(e), 416.945(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.")

Sterling argument fails for several reasons. First, the medical expert did not testify that Sterling had depression instead of bipolar disorder; to the contrary, he explicitly recognized that some of Sterling's psychiatrists treated her for bipolar disorder. (Tr. 48.) Second, the ALJ thoroughly considered the effect of Sterling's bipolar disorder in his disability determination: as Sterling notes in her brief, the ALJ explicitly recognized that Sterling's healthcare providers suspected or diagnosed bipolar disorder, in addition to depression and anxiety. (Tr. 13, 16.) Furthermore, the ALJ accounted for the effects of Sterling's bipolar disorder and other mental impairments in his RFC assessment by limiting her to "simple work not involving the general public . . . which involves only superficial contact with coworkers and supervisors." (Tr. 23.) Sterling does not dispute the ALJ's RFC assessment or his determination that she could perform the jobs identified by the vocational expert. Accordingly, her argument does not require remand.

II.  Substantial evidence supports the ALJ's conclusion that Sterling could ambulate without assistance.

Sterling argues that the ALJ's decision contains inconsistent statements regarding her leg function. (Pl.'s Br. 26–27.) Internal inconsistencies in an ALJ's decision do not require remand unless they affect a claimant's substantial rights. *Slaughter v. Sec'y of Health & Human Res.*, No. 93-5105, 1994 WL 198877, at *1 (5th Cir. May 3, 1994) (upholding ALJ's decision despite internal inconsistencies because the "inconsistency complained of did not affect [the claimant's] substantial rights") (per curiam). To affect a claimant's substantial rights, an alleged error must "render the ALJ's determination unsupported by substantial evidence[.]" *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Sterling argues that substantial evidence does not support the ALJ's conclusion that she "has not demonstrated any gait abnormality or other symptom which would suggest that she requires an assistive device for ambulation." (Pl.'s Br. 27; Tr. 23.) However, substantial evidence supports the ALJ's finding in this regard.

At appointments in June and July of 2006, a physician who had treated Sterling since at least 2002 reported normal musculoskeletal examinations and no edema in her hands or feet. (Tr. 283–84.) In January 2007, a triage nurse who examined Sterling for a laceration to her wrist noted that she walked in to the emergency room and did not use a cane, walker, or wheelchair. (Tr. 427–29.) The following month, an emergency room physician examined Sterling for complaints of fatigue and muscle aches and found that she exhibited normal range of motion in her back and extremities. (Tr. 415–16.) The physician also noted that Sterling had no back tenderness, normal alignment, and normal tone in her extremities. *Id.*

In documents that Sterling submitted in connection with her application for benefits, she

reported that she walked for exercise and power-walked when she felt stressed. (Tr. 229, 238.) In July 2007, a Social Security Administration representative who interviewed Sterling in person observed that she had no difficulty walking. (Tr. 233.) The following month, Sterling presented at the emergency room with complaints of chronic low back pain and a headache after a seizure. (Tr. 402.) According to the treating physician, Sterling reported normal balance and no numbness, tingling, or weakness; and upon examination, she exhibited normal tone in her extremities and normal motor strength. (Tr. 402–03.)

At an emergency room visit in September 2007, the treating physician noted that Sterling reported no musculoskeletal symptoms and exhibited no swelling or tenderness in her extremities. (Tr. 562–63.) That same month, a neuropsychologist who examined Sterling in connection with her application for benefits observed that she was "ambulatory without assistance with no disturbance in gait." (Tr. 443.) In October 2007, a state agency physician reviewed Sterling's evidence of record and concluded that her physical impairments did not limit her ability to stand or walk. (Tr. 462.) Approximately two months later, Sterling reported that she walked a little every day in a document she submitted in connection with her application for benefits. (Tr. 263.)

In April 2008, Sterling presented at the emergency room for abdominal pain. (Tr. 618.) According to the treating physician, she reported no musculoskeletal symptoms and exhibited normal tone and no swelling in her extremities. (Tr. 619.) In October 2008, Sterling presented at the emergency room for complaints of lumbar pain and a muscle spasm. (Tr. 612.) Upon physical examination, the treating nurse practitioner observed that she exhibited normal extremities, gait, and motor strength. (Tr. 614.)

At an emergency room visit in June 2009, Sterling's treating physician noted that she denied

6

muscle and joint pain and exhibited normal range of motion and tone in her extremities. (Tr. 685.) At eleven appointments from July 2009 through July 2011, Sterling's treating psychiatrists found that she exhibited normal psychomotor activity. (Tr. 689, 691, 693, 695, 697, 699, 703, 710, 721, 723, 726.) Starting in May 2011, Sterling reported to her psychiatrists that she had begun working at temporary part-time jobs. (Tr. 709, 713, 717.)

In view of the foregoing substantial evidence, Sterling has not demonstrated that the ALJ's allegedly inconsistent statements regarding her leg function have affected her substantial rights. *Morris*, 864 F.2d at 336. Accordingly, her argument does not require remand. *Slaughter*, 1994 WL 198877, at *1.

III. Any alleged procedural errors have not affected Sterling's substantial rights.

Finally, Sterling argues that the ALJ did not follow procedures outlined in the Hearings, Appeals and Litigation Law Manual (HALLEX) regarding medical experts. (Pl.'s Br. 27–30.) As Sterling notes in her Brief, "where the rights of individuals are affected, an agency must follow its own procedure, even where the internal procedures are more rigorous than otherwise would be required." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981); (Pl.'s Br. 27–28.)

Nevertheless, the Court of Appeals for the Fifth Circuit requires "a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Thus, procedural errors in Social Security cases "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris*, 864 F.2d at 335. Sterling "has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012). Because she has not done

7

so as explained below, the undersigned does not decide whether the ALJ violated the HALLEX provisions cited in Sterling's Brief.

Sterling appears to assert that the alleged procedural defects prejudiced her because the ALJ should have concluded that she had a seizure disorder. (Pl.'s Br. 29.) As previously noted, the ALJ concluded that Sterling had "a diagnosed conversion disorder/pseudoseizures versus a seizure disorder." (Tr. 13.) A conversion disorder is a mental disorder "in which an unconscious emotional conflict is expressed as an alteration or loss of physical functioning, either voluntary motor or sensory." *Stedman's Medical Dictionary* 568 (28th ed. 2006). Pseudoseizures, also known as hysteric convulsions, are convulsions "resulting from conversion disorder (for which hysteria is an older form)." *Id.* at 439, 1592; American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 495 (4th ed., text rev. 2000) (describing subtype of conversion disorder that "includes seizures or convulsions with voluntary motor or sensory components").

Substantial evidence supports the ALJ's analysis of Sterling's reported seizure activity. The evidence of record shows that some of Sterling's healthcare providers prescribed anticonvulsant medication to address what they characterized as a "seizure disorder," but others opined that her convulsions were non-epileptic seizures or pseudoseizures that were the result of a conversion disorder. (*Compare, e.g.*, Tr. 284 *with* Tr. 500, 638.) The medical expert testified that Sterling received treatment for a seizure disorder from some healthcare providers but that others "were concerned that these were not seizures that were well documented as organic seizures." (Tr. 45–46.) In documents submitted in connection with her application for benefits, Sterling herself acknowledged that her condition may have been misdiagnosed and that her physicians thought her seizures were psychogenic. (Tr. 250.) In October 2007, a neurologist who examined Sterling

concluded that her history was "very suggestive of non-epileptic seizures" and noted that a neurological examination and an MRI of her brain were normal. (Tr. 484, 500.) From at least January 2008 through July 2011, Sterling's treating psychiatrists included conversion disorder or pseudoseizures in their diagnoses. (Tr. 638, 640, 642, 648, 691, 709, 713, 717, 721, 723.)

Moreover, the ALJ incorporated seizure precautions into his RFC assessment, limiting Sterling to jobs that did "not entail working at heights, climbing, being around dangerous machinery or driving on the job[.]" (Tr. 23–24, 53–54.) As previously noted, Sterling does not dispute the ALJ's RFC assessment or his determination that she could perform the jobs identified by the vocational expert.

Sterling also appears to argue that the alleged procedural errors prejudiced her because substantial evidence does not support the ALJ's findings regarding her activities of daily living, concentration and pace, social functioning, and episodes of decomposition. (Pl.'s Br. 29–30.) The ALJ concluded that Sterling's mental impairments caused her mild limitations in her activities of daily living; moderate limitations in her social functioning, concentration, persistence, and pace; and no prolonged episodes of decomposition. (Tr. 20.)

Substantial evidence supports the ALJ's findings in these areas. A psychiatrist who examined Sterling for complaints of depression and panic attacks in August 2006 found that she was well groomed and exhibited normal, organized speech; logical thoughts; fair insight and judgment; average intelligence; and intact memory. (Tr. 375.) The psychiatrist also found that Sterling tended to exaggerate her symptoms. (Tr. 373, 375.)

In September 2007 a neuropsychologist examined Sterling in connection with her application for benefits and noted that she was well groomed, congenial, and cooperative. (Tr. 443.) According

9

to the neuropsychologist, Sterling reported that she could care for her own personal needs without supervision or assistance, prepare basic foods, use a microwave, and maintain her household. (Tr. 445.) Sterling also reported that she experienced "good" interactions and communication with others. *Id.* The neuropsychologist found that she exhibited normal speech, coherent and logical thought, and appropriate affect. (Tr. 446.) The following month, a state agency physician reviewed Sterling's evidence of record and determined that her mental impairments caused no difficulties in activities of daily living or maintaining concentration, persistence, or pace; mild difficulties in social functioning; and no extended episodes of decompensation. (Tr. 457)

Sterling's treating psychiatrists from January 2008 through at least July 2011 repeatedly found that she had a casual or neat appearance, cooperative attitude, normal speech, intact memory, average intelligence, logical thought, fair or good insight and judgment, and fair or good attention and concentration. (Tr. 634, 636, 638, 640, 642, 644, 646, 648, 689, 691, 693, 695, 697, 699, 701, 703–05, 710, 714, 718, 721, 723–24, 726.) Finally, the ALJ accounted for Sterling's deficits in social functioning and concentration in his RFC assessment by limiting her to "simple work not involving the general public . . . which involves only superficial contact with coworkers and supervisors." (Tr. 23–24.) Again, Sterling does not dispute the ALJ's findings regarding her RFC.

For the foregoing reasons, any alleged procedural errors do not prejudice Sterling or "cast into doubt the existence of substantial evidence to support" the ALJ's analysis. *Morris*, 864 F.2d at 335. Accordingly, remand is not required. *Shave*, 238 F.3d at 597.

## Conclusion

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Sterling's Complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated: February 27, 2013.

NANCY M. KOENIG
United States Magistrate Judge